

# In the Missouri Court of Appeals
## Eastern District

**DIVISION FIVE**

| | | |
|---|---|---|
| TOM CARTER, | ) | No. ED107582 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable Ellen H. Ribaudo |
| KEN FREDERICKSON, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GENE T. WEISS, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ST. LOUIS COUNTY BOARD OF ELECTION | ) | |
| COMMISSIONERS, | ) | |
| | ) | |
| Respondent. | ) | Filed: February 15, 2019 |

The appellant, Tom Carter, appeals the judgment entered by the Circuit Court of St. Louis County denying his petition to disqualify the respondent, Ken Frederickson, from the April 2, 2019 election for director of the Maryland Heights Fire Protection District. Because Carter did not establish grounds to disqualify Frederickson, we affirm the trial court's judgment.

*Factual and Procedural Background*

The Maryland Heights Fire Protection District has three members on its board of directors who each serve a six-year term. The members are elected on a rotating basis so that one board seat is filled via election every two years. Voters will elect one board member in the April 2, 2019 general election. Tom Carter is a current director, and seeks to serve another six-year term.

Ken Frederickson retired from the District in 2018 as its Deputy Chief Emergency Medical Services Officer, and now seeks election as a member of the District's board of directors.[1] On December 11, 2018, the day the candidate filing period began, Frederickson and Carter each appeared in person and submitted a declaration of candidacy and supporting forms to the District. The supporting forms included Department of Revenue Form 5120, a "tax affidavit," wherein a candidate swears that he is not aware of any delinquent taxes he owes in Missouri. Frederickson's tax affidavit was not notarized. Frederickson testified at trial that he completed and signed his forms, including the tax affidavit, in the presence of the District's office manager and election official, Brandy Douglas. Douglas testified that "when [Frederickson] said he was done filling out the paperwork, I came over, reviewed that it was complete, and signed as the election official." Frederickson testified that he thought Douglas, who is a notary public, would notarize the tax affidavit for him as she had routinely notarized his signature on forms he completed during his employment with the District.

Douglas, in her capacity as the District's election official, completed the jurat on Frederickson's declaration of candidacy, yet she accepted his original signed tax affidavit without executing its notarial jurat or otherwise acknowledging his oath. Douglas retained the original tax affidavit—which was to have been submitted to the Department of Revenue—along

<hr>

[1] Gene T. Weiss also sought to register as a candidate, but the trial court ordered his name removed from the ballot because Weiss neither filed an answer nor appeared in the proceedings below. Weiss does not appeal.

with Frederickson's other original candidate forms, and gave Frederickson a photocopy of his forms. According to Frederickson, when he asked Douglas if there was anything more he needed to do, Douglas told him there was not. Douglas denied that Frederickson asked her such a question. Douglas did not notarize Frederickson's tax affidavit although she testified that she would have notarized it had Frederickson asked her to do so.

Douglas testified that on January 10th, five days before the candidate filing period closed, she reviewed the candidates' forms, and noticed that Frederickson's tax affidavit was not notarized. Douglas did not notarize the tax affidavit although Frederickson had signed it in her presence. She did not notify Frederickson that his tax affidavit was not notarized although she had his phone number, address, and email address. She did not contact the District's legal counsel for guidance. Instead, Douglas contacted an employee of the St. Louis County Board of Election Commissioners for guidance, a person whose position and authority with that agency were not established at trial. Douglas testified that the only reason Frederickson was not placed on the ballot was because his tax affidavit was not notarized.

The candidate filing period closed on January 15, 2019. On January 22nd, Douglas wrote to the St. Louis County Board of Election Commissioners, stating that only Carter had submitted a completed candidate packet. Consequently, Douglas's letter opined, no election was required because Carter was the only candidate for the District's single open board seat. Frederickson first learned of the alleged deficiency in his candidate filing when he received a copy of Douglas's January 22nd letter to the county election authority.

In a separate action, the Circuit Court of St. Louis County granted the District's petition to provide a late notice of election to the St. Louis County Board of Election Commissioners. On January 30th, the court ordered that the St. Louis County Board of Election Commissioners

3

place on the April ballot the election for the District's director position. The following day, Carter filed a verified petition pursuant to Section 115.526 RSMo. (2016) challenging Frederickson's qualifications. Carter averred that Frederickson had failed to submit a notarized tax affidavit as required by section 115.306 RSMo. (Supp. 2018),[2] and sought the court's order disqualifying Frederickson from the elected position of director of the Maryland Heights Fire Protection District.

The circuit court conducted a trial on February 4th. Frederickson testified that he had submitted that morning a notarized tax affidavit to the Department of Revenue. Finding Frederickson's testimony credible in that regard, the trial court entered its judgment the same day ordering that Frederickson remain on the ballot. The trial court found that Frederickson's submission of a notarized tax affidavit complied with the requirements of section 115.306. Carter appeals.

*Mootness of the Controversy*

A threshold question in any appellate review is whether the controversy is moot. *St. Louis Police Leadership Org. v. St. Louis Bd. of Police Commissioners*, 465 S.W.3d 501, 506 (Mo. App. E.D. 2015). When an event occurs that makes a court's decision unnecessary or makes granting effectual relief impossible, the case is moot, and generally the Court should dismiss it. *Id.*

Whenever a candidate for election is disqualified prior to the election, the candidate's name shall not appear on the official ballot. Section 115.526.4 RSMo. (2016). "[B]ut in no event shall a candidate or issue be stricken or removed from the ballot less than eight weeks before the date of the election." Section 115.127.3. The parties agree that under section

---

[2] All statutory references are to RSMo. (Supp. 2018) except as otherwise indicated.

4

115.127.3 the deadline to remove Frederickson from the April 2nd ballot expired February 5, 2019. Frederickson contends that the controversy in this case, therefore, is moot. Carter counters that we should not dismiss for mootness because relief is not limited to removal of Frederickson's name from the ballot.

We hold the controversy is moot. Nonetheless, an exception to the mootness rule applies when a case presents an issue that: (1) is of general public interest and importance, (2) will recur, and (3) will evade appellate review in future live controversies. *Grzybinski v. Dir. of Revenue*, 479 S.W.3d 742, 745 (Mo. App. E.D. 2016). If the exception applies, then our dismissal of the case is discretionary. *Kinsky v. Steiger*, 109 S.W.3d 194, 196 (Mo. App. E.D. 2003). Although the controversy here is moot, we conclude that the public-interest exception applies, and we proceed to the merits of Carter's appeal.[3]

### Standard of Review

The standard set forth in *Murphy v. Carron*[4] governs our review. *Wright-Jones v. Johnson*, 256 S.W.3d 177, 180 (Mo. App. E.D. 2008). We will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* We review questions of law *de novo*, including those of statutory and constitutional interpretation. *Fay v. Stephenson*, 552 S.W.3d 753, 756 (Mo. App. W.D. 2018). We defer to the trial court's findings of facts because of its superior ability to assess witnesses' credibility. *Wright-Jones*, 256 S.W.3d at 180.

### Discussion

"[A]ny candidate for election to an office at a general or special election may challenge the declaration of candidacy or qualifications of any other candidate for election to the same

---

[3] We deny Frederickson's motion to dismiss.
[4] 536 S.W.2d 30, 32 (Mo. banc 1976).

office to seek or hold such office or to have his name printed on the ballot." Section 115.526.1 RSMo. (2016). Carter sought to prevent Frederickson from appearing on the April 2, 2019 ballot because Frederickson failed to: (1) have his tax affidavit notarized, and (2) submit the notarized tax affidavit to the Department of Revenue. Carter contends the trial court erred when it found that Frederickson's submission of a notarized tax affidavit to the Department of Revenue on the morning of trial complied with the statute's requirements. We disagree.

Section 115.306 identifies two bases on which a candidate for elective public office might be disqualified. Section 115.306.1 states that "[n]o person shall qualify as a candidate for elective public office in the state of Missouri who has been found guilty of or pled guilty to" a disqualifying felony. Section 115.306.2(1) provides that any person who files as a candidate for election to public office shall be disqualified if the person is delinquent in the payment of state income taxes, personal property taxes, certain residential real-estate taxes, or municipal taxes. Each potential candidate for election to public office shall file an affidavit with the Department of Revenue and include a copy of the affidavit with the declaration of candidacy. Section 115.306.2(2). The Department of Revenue tax affidavit form contains virtually identical language to that set forth in the statute, and requires that the potential candidate's signature be notarized. The statute provides no penalty for failure to submit a notarized tax affidavit. Section 115.306.2(3) then provides:

> Upon receipt of a complaint *alleging a delinquency of the candidate in the filing or payment* of any state income taxes, personal property taxes, municipal taxes, real property taxes on the place of residence, as stated on the declaration of candidacy, or if the person is a past or present corporate officer of any fee office that owes any taxes to the state, the department of revenue shall investigate such potential candidate to verify the claim contained in the complaint. If the department of revenue finds a positive affirmation to be false, the department shall contact the secretary of state, or the election official who accepted such candidate's declaration of candidacy, and the potential candidate. *The department shall notify the candidate of the outstanding tax owed and give the candidate thirty days to remit any such outstanding taxes owed which are not the*

6

*subject of dispute between the department and the candidate.* If the candidate fails to remit such amounts in full within thirty days, the candidate shall be disqualified from participating in the current election and barred from refiling for an entire election cycle even if the individual pays all of the outstanding taxes that were the subject of the complaint.

(Emphases added).

Section 115.306 provides two instances when a candidate shall be disqualified from elective public office: (1) when the candidate has been found guilty of or pled guilty to a disqualifying felony; and (2) when the candidate is delinquent in the payment of specified state or local taxes. Critically, nowhere does section 115.306 provide that failure to submit a notarized tax affidavit in itself constitutes a ground to disqualify a candidate.

In addition, the statute states that if the qualification of a candidate is challenged based on a tax delinquency, the Department of Revenue will investigate. If the Department of Revenue finds a delinquency, it will give the candidate thirty days to pay the outstanding taxes. A candidate will be disqualified *only* if he fails to timely rectify the delinquency. Thus, section 115.306.2 allows a candidate to correct an actual tax delinquency within thirty days and thereby maintain candidacy for public office.

The primary rule of statutory construction is to determine the legislature's intent from the language used, and to give effect to that intent. *Wright-Jones*, 256 S.W.3d at 181. We give the words used their plain and ordinary meaning. *Id.* We construe statutes so as to avoid unreasonable, oppressive, or absurd results. *Id.*

From the plain language of section 115.306.2, it is clear that the legislature wants to see delinquent taxes paid, and wants to prevent the election of tax debtors to public office. But it is also clear that the legislature wants to allow potential candidates to run for public office if they timely rectify any delinquency. Thus, the statute includes provisions for an investigation

7

followed by a thirty-day period during which a candidate can correct a delinquency. Again, we observe that section 115.306 provides no penalty for failure to submit a notarized tax affidavit, nor does the statute provide that failure to submit a notarized tax affidavit alone can disqualify a candidate.

Here, we have no suggestion of any tax delinquency. Carter seeks Frederickson's disqualification simply because Frederickson failed to have his tax affidavit notarized and submitted to the Department of Revenue before the candidate filing period closed. Frederickson testified that he submitted a notarized tax affidavit to the Department of Revenue on February 4th—the morning of the trial—by faxing a copy and placing the original in the U.S. mail. Finding Frederickson's testimony in this regard credible, the trial court concluded that Frederickson had thus complied with the requirements of section 115.306. Ruling from the bench, the trial court elaborated:

> But the Court notes that there was a request filed for a late filing. And based upon the testimony that in fact such form was mailed to the Department of Revenue today, the Court does find that it is sufficient for purposes of meeting the criteria under Section 115.306 with regards to that. Because the evidence the Court has is that there is a filing with the Department of Revenue with regards to Mr. Frederickson. With the Department of Revenue as of today.

To disqualify Frederickson under the circumstances present here simply because the jurat on his tax affidavit was not completed—without giving him a chance to correct it and when no actual tax delinquency is suggested—would be to absurdly exalt form over substance. It would be absurd to hold that a taxpayer who is not delinquent cannot correct a technical deficiency in his paperwork while allowing a candidate who could be substantively disqualified for tax delinquency thirty days to rectify the delinquency and run in the election.

*Conclusion*

8

Failure to submit a notarized tax affidavit alone does not disqualify a candidate under section 115.306. Furthermore, to construe the statute to disqualify a candidate simply for failing to have the tax affidavit notarized would lead to an absurd result, especially when the candidate receives no chance to correct the oversight while a candidate with an actual tax delinquency receives ample opportunity to correct the delinquency.[5] For these reasons, we affirm the trial court's judgment.

LAWRENCE E. MOONEY, JUDGE

LISA P. PAGE, C.J. and
COLLEEN DOLAN, J., concur.

---

[5] We need not address Frederickson's argument that he did all he needed to do to file as a candidate because we affirm the trial court's judgment for other reasons. Thus, we need not determine whether Douglas fulfilled her solemn duty to perform her responsibilities as an election official in an even-handed manner.

9